## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| ADRIAN CERVANTES COVARRUBIAS, | § § § | |
| PLAINTIFF, | § § § | |
| V. | § § § | CAUSE NO. 1:14-CV-379-LY |
| GREGORY E. DUKES; HOUSTON AVIATION TECHNICAL SERVICES, INC.; ALLIANCE AIRPARTS, INC.; CARLOS RYERSON; RYERSON AND ASSOCIATES, P.C.; AND MANAGEMENT BY GT SERVICES, INC., | § § § § § § § § | |
| DEFENDANTS. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

ON April 30, 2015, the Magistrate Court held a hearing on all pending motions in the above-styled matter, and specifically [#86], the Motion for Summary Judgment filed by Carlos Ryerson and Ryerson and Associates, P.C. (collectively, the "Ryerson Defendants"), and all responsive briefing relating thereto.  *See* Clerk's Dkt. [#88, #90, #91, #92].  All dispositive motions in this case have been referred to the undersigned by United States District Judge, Lee Yeakel, for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and all nondispositive motions have likewise been referred for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of

Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

At the hearing, Cade Adams appeared for the Plaintiff, Adrian Cervantes Covarrubias. Brett Hill and Ty Gibson[1] appeared on behalf of the Ryerson Defendants.  George Crow appeared for defendant, Gregory Dukes.  After carefully considering the arguments of counsel at the hearing, reviewing the pending motion and related briefing, analyzing the relevant case law, and viewing the motion in light of the entire case file, the undersigned issues the following Report and Recommendation.

## I. ALLEGATIONS OF EX PARTE CONTACT

First to be addressed at the hearing were statements allegedly made by Brett Hill, counsel for the Ryerson Defendants, to either Cade Adams or his wife (and attorney partner), to the effect that Mr. Hill had consulted with the undersigned and determined the undersigned "didn't have any problem" with Hill's opposed motion to extend the deadline to file the dispositive motion now under consideration.  *See* Resp. Mot. Summ. J. [#88] at 1.  At the hearing, Hill denied suggesting that the Court had made any comment regarding the merits of his motion to extend the deadline.  Hill admitted, however, that in answer to a question from his opposing counsel to the effect of "what is the Court going to think of your filing this frivolous motion?" he had responded by stating that he had already spoken with the Judge about the motion and "didn't think the Court would care."

The Court is sensitive to the difficult position Mr. Hill's conduct and statements created

---

[1] It does not appear from the Clerk's records that Ty Gibson is currently admitted to practice in the Western District of Texas.  Mr. Gibson stated at the hearing that he was appearing for the Ryerson Defendants, but made no argument or otherwise participated on their behalf.  Should Mr. Gibson intend to further represent the Ryerson Defendants, he is advised that he must file a motion for admission pro hac vice and a notice of appearance before he will be heard to speak for any party in this matter.  *See* Local Rule AT-1, Admission and Discipline of Attorneys.

for Mr. Adams. Faced with either version of the statement that Mr. Hill allegedly made concerning his contact with the Court over a contested motion, Mr. Adams was justified in thinking the Court "had no problem with" or "didn't care" about granting the motion for extension because of some argument or commentary made by Mr. Hill *ex parte.* The Court admonished Mr. Hill that any statement to opposing counsel intimating that an attorney has spoken with a judge about a pending motion is highly improper, as it inherently carries the strong implication that the judge has somehow already chosen sides in the matter. The Court further admonished Mr. Hill not to call the undersigned's chambers again for any reason, in this or future litigation before this Court.

Fortunately, the actual call that took place was not a violation of the rules against *ex parte* conduct. The Code of Judicial Conduct for United States Judges addresses *ex parte* communications in Canon 3, Subsection (A)(4). Specifically, *ex parte* communication is not objectionable if the communication is for scheduling or administrative purposes, does not address substantive matters, and "the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication." *Id.* at § (A)(4)(b). In this case, Mr. Hill had made a series of calls to chambers with procedural questions, each of which the undersigned's staff had told him could not be answered by the Court. On this occasion, the undersigned stepped in to prevent Mr. Hill from continuing to place his staff in this awkward position. The undersigned specifically told Mr. Hill to file whatever, in his judgment, needed to be filed, and the Court would rule on it. The undersigned told Mr. Hill that, as a trial court, we can only react to filings actually made, and cannot give legal advice.

Nothing in Mr. Hill's phone conversations, either with chambers staff or on this single occasion with the undersigned, could reasonably have given Mr. Hill any procedural,

substantive, or tactical advantage.  In Mr. Hill's multiple calls to chambers staff, he never spoke

with any law clerk actually assigned to this case.  The term clerk with whom he did speak on

several occasions consistently and properly told him that she could not give him advice on how

or what to file in his case.  The undersigned's only conversation with Mr. Hill was likewise to

inform him that this chambers does not give legal advice and can only rule on motions properly

filed.

Furthermore, with regard to the specific motion in question, it is not the practice of the

Magistrate Court to move a dispositive motion deadline set by the District Court without first

conferring with the District Court about the potential impact of such a change on its heavy trial

docket.  Thus, once Mr. Hill actually filed his motion for extension, it was granted only after the

undersigned's staff attorney consulted with the District Court concerning the merits of the

proposed extension.

At the hearing, Mr. Adams agreed that these facts "put the matter to bed" and he had no

further concerns that the Court's judgment had been tainted by Mr. Hill's *ex parte*

communication. Given Mr. Hill's relative inexperience and clear lack of ill intent, the

undersigned believes no sanction or further disciplinary action against Mr. Hill is necessary,

beyond the admonishment made in open court to make no further calls to chambers for any

reason and to conduct any business with the court either through motion practice or letter

briefing copying opposing counsel.

## II. MOTION FOR SUMMARY JUDGMENT

The motion to extend the deadline having been granted, *see* Order of March 25, 2015

[#84], and the propriety of that determination having been established at the hearing, the

Magistrate Court next considers the Ryerson Defendants' Motion for Summary Judgment.  For

the reasons below, the undersigned RECOMMENDS the District Court GRANT the motion.

## A.  BACKGROUND

This case arises out of Plaintiff's allegations that Defendant Gregory E. Dukes ("Dukes") stole Plaintiff's private airplane in May of 2012 by forging a Bill of Sale transferring the aircraft from Plaintiff's company, Falcon N297PF, LLC ("The Company" or "Falcon") to Dukes.  Third Am. Compl. [# 43] at ¶ 13.  Plaintiff asserts Dukes sold the aircraft for parts in August of 2012. *Id.*  According to Plaintiff, Dukes' theft of the airplane was made possible by breaches of contract and fiduciary duty committed by Plaintiff's former lawyer, Carlos Ryerson.  *Id.* at ¶ 11. Plaintiff's account of Ryerson's role in the drama, supported by documentation entered into the record by Plaintiff or produced in discovery by Plaintiff, is as follows:

In Plaintiff's own words, he hired Carlos Ryerson "in order to hold legal title to the Aircraft in trust for the benefit of Plaintiff in an effort to effectuate registration of the Aircraft in the United States on the Federal Aviation Administration's (herein referred to as "FAA") Registry *as a United States Citizen*."  *Id.* (emphasis added).  As Plaintiff candidly admits, "Ryerson accomplished this task by forming a Delaware Limited Liability Company under the name Falcon N297PF, LLC, ["the Company" or "Falcon"] and by placing title into and by registering the Aircraft in the name of this Limited Liability Company . . .."  *Id.*[2]

Plaintiff complains that, in the course of these actions, Ryerson breached fiduciary and contractual duties to him by failing to file an affidavit of citizenship or a copy of the parties' "Trust Agreement" with the FAA "as required under the Federal Aviation Regulations."  *Id.*  As

---

[2] Plaintiff incorrectly refers to Falcon N297PF, LLC as "the Trust" throughout the remainder of the Third Amended Complaint and other briefing.  *Id.*  As detailed above, the Trust consisted of the membership interests in the Company, held in trust for Covarrubias, but did not confer any right of control over the Company and never consisted of any ownership interest in the airplane, which was an asset of the Company.

Plaintiff correctly points out, FAA Regulation 14 C.F.R. 14.47-7, allowing the creation of "non-citizen trusts," would have required Ryerson to file documents with the FAA disclosing the interest of Plaintiff, a non-U.S. citizen, in any trust that owned the airplane. *Id.* at ¶ 21. But the aircraft was never owned by a non-citizen trust. *See* Resp. Mot. Summ. J. Ex. 1-10, Bill of Sale to Falcon and FAA Registration to Falcon. The plane was owned by the Company, Falcon, whose sole member was Ryerson, a U.S. citizen. *Id.*

Ryerson, in his capacity as the sole Member of the Company, caused Falcon to create a Trust in which Ryerson was the "Owner Trustee" and Covarrubias was the "Beneficiary." Resp. [#88] at Ex. 1-7, Declaration of Trust, at 1. The aircraft, however, was never part of the Trust Estate. *Id.* Instead, the Trust Estate consisted of the Membership Units in the Company.[3] *Id.* at 1. The stated purpose of the Trust was "to ensure the eligibility of the aircraft owned or to be owned ***by the Company***, . . . for United States Registration with the Federal Aviation Administration." *Id.* at 1 (emphasis added).

Plaintiff himself has tendered evidence that Ryerson did, in fact, place title to the aircraft into the Company and register the aircraft to the Company in documents filed with the FAA. Resp. to Mot. Summ. J. [#88] at Ex. 1-10, July 24, 2009 Bill of Sale to Falcon; *see also id.,* August 10, 2009 Registration of Aircraft to Falcon. The aircraft was thus registered to a "United States Citizen" within the definition of FAA regulations—the very thing Plaintiff asserts he hired Ryerson to do. Third Am. Compl. [#43] at ¶ 11; *see also* 14 C.F.R. 47.2(3) (defining "United States Citizen" as including organizations managed and controlled by U.S. Citizens.)

On November 9, 2011, via Resolutions Adopted by Unanimous Consent, Ryerson

---

[3] The terms of the Declaration of Trust expressly stripped the Beneficiary of any right to direct the Owner Trustee with respect to the Membership Units or otherwise control the Company through the Trust. *Id.* at Art. III.

resigned as the sole Manager and Treasurer of the Company, "effective immediately after the execution of these resolutions."  Resp. Mot. Summ. J. [#88] Ex. 2, Resolutions Adopted by Unanimous Consent.   These final resolutions also "accepted, approved, and ratified" the resignation of Capt. José de Jesús Bautista López as EVP of Global Operations and Secretary of the Company, and from "all other positions of authority in the Company."  *Id.*

Ryerson sent Plaintiff a letter, also dated November 9, 2011, enclosing a copy of the Resolutions by which Ryerson, as sole member of Falcon, accepted Bautista's resignation and himself resigned from all management roles in the Company.  Mot. Summ. J. [#86] Ex. 2.[4]  In this letter, Ryerson also notified Plaintiff of Ryerson's immediate resignation as Owner Trustee of the Trust, and tendered to Plaintiff all the Membership Units of the Company.  *Id.* The letter noted that the aircraft was no longer registered in the United States, and therefore it was no longer necessary to hold the Membership Units in trust.  *Id.*  Finally, the letter noted that Ryerson was that day delivering the books and records of the Company to William H. Weiland, a representative of Plaintiff, to be forwarded to Plaintiff's legal counsel in Mexico City.  *Id.* Plaintiff, on November 9, 2011, "being the sole member of Falcon N297PF, LLC ('the Company')," appointed himself Manager of the Company and approved, ratified, and adopted the "actions taken on behalf of the Company . . . to remove [the aircraft] from the Civil Aviation Registry maintained by the United States Federal Aviation Administration . . .."  Third Am. Compl. [# 43], Ex. 1.  Thus, the documents produced in this litigation ***by the Plaintiff alone*** establish that on November 9, 2011, Plaintiff owned and was the sole manager of the Company,

---

[4] Plaintiff asserts he produced this Letter of Resignation in discovery on at least two occasions as Bates Number JA00217. *See* Pf's Resp. to Df. Carlos Ryerson's Mot. to Extend Deadline to File Disp. Mots. [#81] at 2. Given Plaintiff's production of the letter in response to discovery requests concerning this matter, the vague intimations made by Plaintiff's counsel that the letter is unauthenticated are not well taken.

Falcon; the Company continued to own the aircraft,[5] which had been removed or was in the process of being removed from the FAA's domestic registry; and Carlos Ryerson had no continuing role in the Company or the Trust.  Third Am. Compl. [#43], Ex. 1, Mot. Summ. J. [#86] Ex. 2; Resp. Mot. Summ. J. [#88] Ex. 2.[6]

Plaintiff, as the sole Member of the Company that owned the plane at the time of Dukes' alleged forged Bill of Sale, admits he was aware of the forged bill of sale as early as July 20, 2012.  *Id.* at ¶ 14. Yet the record is silent as to any action taken by Plaintiff—or the Company under Plaintiff's sole control—to contest the validity of Dukes' bill of sale until November 2012, long after Dukes had sold the plane for parts.  *Id.* at ¶ 14.  Plaintiff nevertheless asserts he is entitled to damages because Ryerson's 2009 registration of the plane to the LLC, instead of to a non-citizen trust, and Ryerson's 2011 resignation as a trustee constituted negligence, breach of contract, and breach of fiduciary duty that facilitated the theft of the plane by Dukes in 2012.

## B.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

---

[5] At some time after this suit was filed, Plaintiff caused the Company to transfer all right, title, and interest to the aircraft and to "any and all claims it could have brought in the above referenced Lawsuit" to the Plaintiff individually.  The purported transfer of the Company's interest in the aircraft to Plaintiff in 2014, after suit was filed, does not create an ownership interest in the Plaintiff that predates this transfer.  To the extent the Company has transferred its causes of action to Plaintiff, Plaintiff stands in the shoes of the Company and can assert only the claims available to the Company arising out of these facts.

[6] On July 7, 2014, Plaintiff retroactively dissolved the Trust, effective November 9, 2011.  As the Trust estate consisted solely of the Membership Interest in the Company, which was conveyed to Plaintiff by Ryerson on November 9, 2011, it appears the Trust was effectively dissolved as of that date, when Plaintiff declared himself the sole Member of the Company.  It is thus not clear what purpose the retroactive dissolution of the Trust serves, other than to confirm Plaintiff's intention to take control of the Company and its assets as of November 9, 2011 rather than continuing his role as the non-controlling Beneficiary of a Membership Interest held in trust by another party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254,106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87,106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir. 2004).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

## C.  ANALYSIS

Breach of contract, negligence, and breach of fiduciary duty all have two basic elements in common.  Each requires the plaintiff to establish the existence and breach of a duty owed by the defendant to the plaintiff, and each requires the plaintiff to establish a causal connection between the breach and some compensable damage. *See, e.g., Myers v. Hall Columbus Lender, LLC*, 437 S.W.3d 632, 635 (Tex. App.—Dallas, 2014, no pet.) (setting out the elements of breach of contract); *Nabors Drilling, U.S.A. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (setting

out the elements of negligence); *Barrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999) (setting out the elements of breach of fiduciary duty).  Reading the summary judgment evidence in this matter in the light most favorable to Plaintiff, the non-movant, the record is devoid of any evidence that  Ryerson had a duty to the Plaintiff at any time after November 9, 2011.  As the plane was allegedly stolen in May of 2012, there is no evidence Ryerson owed Plaintiff a duty during the relevant time period.  To the extent Ryerson allegedly breached duties owed to Plaintiff prior to November 9, 2011, there is no evidence in the record that any of those alleged breaches caused the theft of the plane, impaired Plaintiff's knowledge of the theft or ability to take action concerning the theft, or otherwise damaged the Plaintiff or unjustly enriched the Ryerson Defendants.  Summary judgment in favor of the Ryerson Defendants is therefore appropriate.

### 1. No Evidence of a Duty Owed to Plaintiff During the Relevant Time Period

The relevant documents terminating Carlos Ryerson's duties to the Plaintiff are the Resolutions Adopted By Unanimous Consent dated November 9, 2011, Resp. Mot. Summ. J. [#88] Ex. 2, and the letter of resignation as Trustee, dated November 9, 2011, Mot. Summ. J. [#86] Ex. 2.  At the hearing, Plaintiff's counsel argued the documents leave a fact issue as to whether Ryerson's resignation from the Company was effective on November 9, 2011 or was contingent on the resignation of Bautista from the company at some later date.  However, the plain language of the Resolutions, in relevant part, states:

> RESOLVED, that the resignation of Carlos Ryerson as the sole Manager and Treasurer of the Company effective ***immediately after the execution of these resolutions***, and the resignation of Capt. José de Jesús Bautista López, as EVP of Global Operations and Secretary of the Company, and from all other positions of authority in the Company, be, and the same hereby are, accepted, approved, and ratified for all purposes . . . .

Resp. Mot. Summ. J. [#88] Ex. 2 (emphasis added).   Nothing in this language makes Ryerson's

resignation dependent on Bautista's, or conditions either resignation on some future event.

Rather, Bautista's resignation is accepted in this Resolution by Ryerson as Manager, and

Ryerson's resignation is effective immediately after the execution of this Resolution.  *Id.*  There

is no evidence in the record that Ryerson held any position of authority in the Company after this

November 9, 2011 resignation.

Plaintiff has argued that, notwithstanding Ryerson's clear tender of his resignation on

November 9, 2011, the Trust document rendered Ryerson's resignation ineffective until a

successor was appointed.  But Plaintiff's decision, prior to filing suit, to backdate his July 7,

2014 dissolution of the trust to coincide with same day as Ryerson's resignation effectively

negates any continued need for a trustee after November 9, 2011.  Third Am. Compl. [#43]

Ex. 2.

Even without giving the 2014 dissolution of the Trust retroactive effect, the plain

language of the Declaration of Trust does not support Plaintiff's argument that Ryerson owed

any duties as Trustee in May of 2012, some seven months after he tendered his resignation.  The

Declaration of Trust states that the "Owner Trustee may resign at any time upon giving thirty

(30) days prior written notice of such resignation to the Trustor.  Such resignation shall take

effect only upon the appointment of a successor trustee pursuant to Section 2.05 . . .."  Resp.

Mot. Summ. J. [#88]  Ex. 1-7, Sec. 2.03.  That section, in turn, requires "Promptly upon the

removal, resignation, or vacancy of an Owner Trustee . . . a successor trustee shall be appointed

by a written instrument signed by the Beneficiary."  *Id.* at Sec. 2.05.  In this case, the Beneficiary

did not appoint a successor trustee at all, but instead waited until July 7, 2014 to dissolve the

trust entirely (an action he declared retroactive to November 9, 2011).  Third Am. Compl. [#43]

Ex. 2.

Plaintiff's delay of almost three years before addressing the issue of a successor trustee surely breaches the requirement of "prompt appointment" found in Section 2.05 of the Declaration of Trust.  *See CherCo Props, Inc. v. Law, Snakard, & Gambill, P.C.*, 985 S.W.2d 262, 266 (Tex. App.—Fort Worth, 1999, no pet.) (when a contract does not specify a time for performance, the "the law will imply a reasonable time"); *see also DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 172 (Tex. App.—Fort Worth, 2012, no pet.) ("'[R]equiring contracting parties *to fix a date certain* in order to set a temporal guideline in which to complete a certain task demands more definiteness than Texas law requires.'") (quoting *Herrmann Holdings, Ltd. v. Lucent Technologies, Inc.*, 302 F.3d 552, 556 (5th Cir. 2002), emphasis added). Ordinarily, what constitutes a reasonable time is a question of fact, but when the underlying timeline is admitted or undisputed, the reasonableness of performance can be determined as a matter of law.  *CherCo Props.*, 985 S.W.2d at 266.  Plaintiff's undisputed delay in taking action to dissolve the trust until July 7, 2014 is not reasonably prompt as a matter of law. Third Am. Compl. [#43] Ex. 2*; see, e.g., Miller v. Carter*,  2012 Tex. App. LEXIS 7255, n.5 (Tex. App.—Dallas 2012, pet. rev. denied) ("Failing to complete a project that was supposed to require 7-10 working days within four months does not constitute performance within a reasonable time"). Because Plaintiff was required to appoint a successor trustee "promptly," he cannot claim Ryerson's resignation was held hostage until 2014 by his failure to take action.  Resp. Mot. Summ. J.[#88]  Ex. 1-7, Sec. 2.05.  By the same reasoning, Plaintiff cannot claim that Ryerson's resignation remained in limbo until May of 2012, seven months after his written resignation triggered Plaintiff's "prompt appointment" duty.  *Id.*

At the hearing, counsel for Plaintiff argued in the alternative that an "Operating

Agreement" provides some evidence that Ryerson continued to hold positions of responsibility with respect to the aircraft after November 9, 2011. There are two Operating Agreements in the record: the Operating Agreement of Falcon N297PF, LLC (the "Company Operating Agreement"), Resp. Mot. Summ. J. [#88] Ex. 1-4, and the Aircraft Operating Agreement, *id.* at Ex. 1-9.

To the extent Plaintiff relies on the Company Operating Agreement to create a continuing duty owed by Ryerson after his resignation, this document provides "A manager shall serve until a successor is elected by the Members." *Id.* at Art. III, §1(b). Ryerson resigned as manager on November 9, 2011. Covarrubias, as sole Member of the Company, elected himself Manager effective November 9, 2011, the same day Ryerson resigned. Third Am. Compl. [# 43], Ex. 1. There is thus no evidence this term of the Operating Agreement held Ryerson in a position of control within the Company after his resignation date. The Company Operating Agreement allows the resignation of officers at any time. Resp. Mot. Summ. J. [#88] Ex. 1-4 at Art. III, § 2(b). The Company Operating Agreement also specifically allows the withdrawal of a Member: "Withdrawal by a Members [*sic*] is not a breach of this Agreement." *Id.* at Art. VII, §1(a). Thus, nothing in the Company Operating Agreement invalidates or qualifies Ryerson's resignation.

To the extent Plaintiff relies on the Aircraft Operating Agreement to suggest Ryerson had ongoing contractual and fiduciary duties to Plaintiff after his resignation from the Company and the Trust, the Aircraft Operating Agreement expressly negates this argument. The Aircraft Operating Agreement specifies that it "***shall terminate*** upon the effective date of (i) any removal, ***resignation***, or cessation of citizenship of the Owner as trustee under the Trust Agreement in accordance with the terms thereof or (ii) the termination, for any reason, of the

Trust Agreement."   *Id.* at Ex. 1-9, ¶ 15 (emphasis added).   The plain language of the Aircraft Operating Agreement thus establishes the parties intended any duties running between the Owner (Falcon, as held in trust by Ryerson) and the Operator (Intergalactic Air, LLC) to terminate when Ryerson tendered his resignation as Trustee of the Owner Company.

Plaintiff has entered into the record a public filing establishing that that Intergalactic Air, LLC, the Operator under the Aircraft Operating Agreement, was jointly managed by Ryerson and Bautista as of December 31, 2015.   Resp. Mot. Summ. J. [#88], Ex. 3.   At the hearing, Plaintiff's counsel contended Ryerson and Bautista were the managers of Intergalactic Air at the time of the dispute in question, and because Ryerson "wore a lot of hats" with respect to the aircraft transaction, there was necessarily a fact issue as to his role in the alleged theft of the plane.   Plaintiff has provided no evidence, however, of any abuse of the corporate form or any manner in which Ryerson, in any of his multiple roles, had any continuing responsibility to Plaintiff after November 9, 2011.[7]

Absent some duty that existed at the time of the alleged breach, Plaintiff's claims of breach of contract, negligence, and breach of fiduciary duty must fail.   *See, e.g., Allen Keller Co. v. Foreman*, 343 S.W.3d 420, 426 (Tex. 2011) (where contractor had finished work and "vacated the premises more than four months before the accident occurred," the contractor had "no duty to rectify the site conditions or to warn of them"); *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 159 (Tex. 2004) ("Generally, a lawyer's fiduciary duties to a client, although extremely

---

[7] Plaintiff has already asserted, in seeking summary judgment against another defendant, Gregory Dukes, that the purported bill of sale from Falcon to Dukes signed by Ryerson, first as President and then as Manager, in December of 2011 (filed with the FAA by Dukes in May of 2012) is a forgery.   Having taken this position and relied on Ryerson's affidavit of forgery in asking this Court for summary judgment against Dukes, Plaintiff cannot now be heard to argue that Ryerson actually signed the bill of sale for purposes of establishing a fact issue against him.   *See, e.g., Hall v. G.E. Plastic Pac. PTE, Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) ("Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in ***the same*** or some earlier proceeding.") (emphasis added); *Ergo Science v. Martin*, 73 F.3d 595, 599–600 ("What is clear is that the district court, as a matter of federal procedure, is entitled to rely on statements made by counsel . . ..").

important, extend only to dealings within the scope of the underlying relationship of the parties.") (internal quotation omitted); *Shindler v. Mid-Continent Life Ins. Co.*, 768 S.W.2d 331, 335 (Tex. App.—Houston [14th Dist.] 1989, no writ) (no cause of action was available against a party to the contract for alleged misconduct that took place after the contract had already terminated).  Nor can Plaintiff claim that Ryerson owed some independent duty to prevent the forgery, as Texas law generally provides no duty to control the conduct of third persons.  *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596–97 (Tex. 2005).

### 2. No Evidence Alleged 2008–2011 Breaches Caused or Contributed to 2012 Theft

Plaintiff nevertheless contends that Ryerson's legal advice and actions during the period 2008 through 2011, when he was acting as an attorney, Manager of the Company, and Owner Trustee of the Company, damaged Plaintiff, and that ongoing damage extended to theft of the aircraft in 2012.  Plaintiff's argument on this point seems to be that Ryerson, by structuring the Company and Trust as he did, essentially wrote Plaintiff out of the aircraft's chain of title.  Plaintiff contends that, because Ryerson structured the aircraft's chain of title to exclude Plaintiff's personal interest in the plane, Plaintiff was hampered in his ability to prevent Dukes from forging the bill of sale and ultimately prevented from obtaining relief from Alliance Air Parts, who bought the airplane as an innocent purchaser without notice of Plaintiff's interest.

The record constructed by Plaintiff's own documentation and factual contentions, however, establishes that (1) at the time Greg Dukes filed the allegedly forged bill of sale with the FAA, Plaintiff was the sole Member and Manger of the Company, Falcon, that actually owned the aircraft, *see* Third Am. Compl. [#43], Ex. 1; and (2) Plaintiff had actual knowledge of the forged bill of sale on or about as July 20, 2012, a full month before Dukes sold the aircraft to Alliance Air Parts on or about August 23, 2012.  *Id.* at ¶¶ 13–14.  Thus, even if Plaintiff's

individual interest, or interest as the beneficiary of a non-citizen trust, was not reflected in the chain of title constructed by Ryerson in 2008, there is no evidence that Plaintiff's interests were excluded from the chain of title in 2012, as he was the owner and manager of the Company that held title to the aircraft and he had actual knowledge of the allegedly fraudulent bill of sale before Dukes sold the aircraft to an innocent third party.  There is no evidence in the record that anything Ryerson did or failed to do while performing as attorney for Plaintiff, Manager of the Company, Trustee of the Trust, or in any other capacity impaired Plaintiff's standing or ability to raise timely objections to the allegedly fraudulent bill of sale filed by Dukes in May of 2012. Without this essential element of causation, Plaintiff's claims for breach of contract, negligence, and breach of fiduciary duty must fail.

## D.  RECOMMENDATION

For the reasons outlined above, the undersigned RECOMMENDS that the Ryerson Defendants' Motion for Summary Judgment [#86] be GRANTED and all of Plaintiff's claims against Carlos Ryerson and Ryerson & Associates, P.C. be DISMISSED WITH PREJUDICE.

## III.  OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings

and recommendations in the Report and, except upon grounds of plain error, shall bar the party

from appellate review of unobjected-to proposed factual findings and legal conclusions accepted

by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53, 106

S. Ct. 466, 472–74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th

Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report and

Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail,

return receipt requested.

**SIGNED** on May 7, 2015.

_____

Mark Lane,
United States Magistrate Judge